# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-708 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| EARNEST SYLVER, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

*Pro se* defendant Earnest Sylver ("Sylver") moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 32 (§ 2255 Motion); *see* Doc. No. 32-1 (Memorandum in Support); Doc. No. 49 (Supporting Affidavit).) Sylver also filed a motion to supplement the record (Doc. No. 50 (Motion to Supplement); *see* Doc. No. 51 (Supplement)), and to amend his motion to vacate. (Doc. No. 53 (Motion to Amend).) Plaintiff United States of America (the "government") opposes Sylver's motions (Doc. No. 45 (Response to § 2255 Motion); Doc. No. 52 (Response to Motion to Supplement and Motion to Strike); Doc. No. 54 (Response to Motion to Amend).) The government also moves to strike Sylver's supplement. (Doc. No. 52; *see* Doc. No. 51.)

For the reasons set forth below, Sylver's motions to supplement and amend are denied, and the government's motion to strike is moot. The Court will hold an evidentiary hearing on the limited question of whether Sylver's trial counsel ignored an instruction to file a notice of appeal. All other grounds for relief in Sylver's motion to vacate are denied.

## I.     BACKGROUND

In February 2022, authorities in Sydney, Australia arrested a nineteen-year-old male on charges of online child abuse. (*See* Doc. No. 28 (Government Sentencing Memorandum), at 1;[1] *see also* Doc. No. 24 (Final Presentence Investigation Report ("PSR")) ¶ 6.) In connection with these charges, Australian police executed a search warrant at the male's residence and located numerous electronic devices containing Child Exploitation Material ("CEM"). On one of the devices, law enforcement located encrypted chats between the male and a user named "Earnest." (Doc. No. 28, at 1–2; Doc. No. 24 ¶¶ 5–6.)

It was later determined that "Earnest" was Sylver. (Doc. No. 28, at 2; *see also* Doc. No. 24 ¶ 5.) Sylver and the Australian male communicated for more than a year—between March 14, 2021 and March 28, 2022—exchanging 3 photos, 490 videos, 7 files, and 142 links containing child pornography. (*See* Doc. No. 24 ¶ 6.) The Department of Homeland Security Investigations ("HSI") subsequently requested that its Cleveland, Ohio division investigate Sylver's online activities. (*See id.* ¶ 5.)

The investigation revealed that, in addition to exchanging child pornography with the Australian male, Sylver uploaded child pornography to his Facebook account. (*Id.* ¶ 7.) On April 11, 2022, HSI received a National Center for Missing and Exploited Children ("NCMEC") CyberTip from Facebook regarding Sylver's account. (*Id.*) Facebook reported that Sylver uploaded two files containing suspected CEM and shared them with another Facebook user on September

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

29, 2018. (*Id.*) HSI agents reviewed the uploaded files and confirmed they were two videos containing child pornography. (Doc. No. 45-1 (HSI Report); *see* Doc. No. 24 ¶ 7.)

On November 15, 2022, HSI executed a search warrant at Sylver's residence in Bedford, Ohio, during which they seized a Dell laptop. (Doc. No. 24 ¶ 8.) An onsite forensic preview examination of the laptop revealed multiple files of suspected CEM. (*Id.*) Authorities subsequently secured Sylver's mobile phone and obtained a warrant for that device as well. The forensic examinations of the laptop and cell phone yielded 158 videos (containing 10 hours of video footage) and 138 images depicting child pornography. (*Id.* ¶ 9.) Authorities also located therein 394 images and 99 videos of suspected child erotica or age difficult files. (*Id.* ¶ 10.)

On December 15, 2022, a two-count Indictment was returned against Sylver. (Doc. No. 1 (Indictment).) Count 1 charged that, from approximately February 22, 2018 to September 12, 2022, Sylver knowingly received and distributed child pornography, in violation of 18 U.S.C. § 2252(a)(2). (*Id.* at 1.) Count 2 charged that, on or about November 13, 2022, Sylver possessed a Samsung cell phone and a Dell laptop containing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (*Id.* at 1–2.)

On April 26, 2023, Sylver entered an open plea of guilty (without a plea agreement) to Counts 1 and 2 in the Indictment. (Minutes of Proceedings [non-document], 4/26/2023.) Before accepting his plea, the Court engaged Sylver in a thorough colloquy under Fed. R. Crim. P. 11. (*See generally* Doc. No. 39 (Change of Plea Hearing Transcript).) At the conclusion of the hearing, the Court accepted Sylver's guilty plea as knowing and voluntary. (*Id.* at 35–36.)

Prior to sentencing, the Court ordered the preparation of a PSR, and defense counsel filed a lengthy sentencing memorandum. (Doc. No. 27 (Sentencing Memorandum); *see* Doc. No. 24.)

On September 25, 2023, the Court sentenced Sylver to a custody term of 168 months for each count, to be served concurrently, for an aggregate term of 168 months. (Doc. No. 29 (Judgment); Doc. No. 31 (Amended Judgment);[2] *see* Minutes of proceedings [non-document], 9/25/2023.) The Court began with a calculation under the advisory sentencing guidelines. With a total offense level of 34 and a criminal history category of III, the Court determined that the advisory sentencing guidelines range was 188 to 235 months. (Doc. No. 40 (Sentencing Hearing Transcript), at 7; *see also* Doc. No. 24 ¶¶ 31, 55, 88.) The Court then varied downward 1 level to arrive at its sentence. (Doc. No. 40, at 33–34; *see* Doc. No. 30 (Statement of Reasons), at 3–4.)

Sylver did not take a direct appeal. Instead, on September 23, 2024,[3] he filed the present motion to vacate, the bulk of which is devoted to claims that trial counsel rendered constitutionally ineffective assistance. In total, Sylver raises eight grounds for relief, arranged by arguments, as follows:

> **Argument A**: Counsel [was] constitutionally ineffective during the critical stages of pre-trial for failing to file a requested motion to suppress evidence seized in violation of the Fourth Amendment.
>
> **Argument B**: Counsel [was] constitutionally ineffective for failing to file a motion to dismiss the Indictment based on multiplicity counts which violated petitioner's right to due process.
>
> **Argument C**: Counsel was constitutionally ineffective for failing to file a motion to withdraw petitioner's guilty plea, where on the Court's record fair and just reasons exist.

---

[2] The following day (September 26, 2023), the Court amended its judgment to correct the amount of the special assessment. (*See* Doc. No. 31.)

[3] The prison mailbox rule, announced in *Houston v. Lack*, 487 U.S. 266, 270–72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), provides that a federal prisoner's *pro se* motion to vacate is ordinarily deemed filed on the date that it was submitted to prison mailing officials. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999). While Sylver's motion was filed on the docket on September 26, 2024, the motion provides that it was placed in the prison mailing system on September 23, 2024. (Doc. No. 32, at 11; *see* Doc. No. 32-1, at 28.)

**Argument D**: The prosecutor violated his constitutional [duty] to disclosure [sic] by withholding favorable evidence for the defense.

**Argument E**: Counsel [was] constitutionally ineffective for failing to inform petitioner of the true nature of the charges, consequences and erroneously advising petitioner to plead guilty. Petitioner[’s] plea was not knowingly nor voluntarily entered.

**Argument F**: Counsel [was] constitutionally ineffective for failing to inform petitioner of the true nature of the charges, and erroneously advising petitioner to plead guilty. Petitioner's plea was not knowingly [or] voluntarily entered. Clearly the supported waiver only serves to cover up counsel's own ineffectiveness.

**Argument G**: Counsel [was] constitutionally ineffective for failing to file objections to the presentence investigative report [under] Fed. Rule Criminal P. 32(a)(3)(B) and utilize the arguments and argue for a lesser sentence.

**Argument H**: Counsel [was] constitutionally ineffective for failing to file a requested direct appeal.

(Doc. No. 32-1, at 6–24 (capitalization omitted, cleaned up).) Sylver also requests an evidentiary hearing. (*Id*. at 25–26.)

## II.    GOVERNING STANDARDS OF REVIEW

### A.  Motion To Vacate Under 28 U.S.C. § 2255

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin*, 330 F.3d at 736 (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A §

6

2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735.

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Subsequently presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*. (citations omitted).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner,* 183 F.3d at 477). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *see also*

*Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id*. (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over pretrial proceedings and sentencing, the judge may rely on her recollections of those events. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge*, 431 U.S. at 74 n.4).

The Court finds that, with the exception of the ground relating to counsel's alleged failure to file a notice of appeal (Argument H), an evidentiary hearing is not warranted in the present case. As set forth in detail below, Sylver has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Sylver in support of the present motion are either contradicted by the record, time-barred, or are averred to in a perfunctory and conclusory manner, preventing further review by this Court.

### B.  Ineffective Assistance Of Counsel

"To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams*

*v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

A criminal defendant has the right to effective assistance of counsel at "all 'critical stages of the criminal proceedings.'" *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009) (further citations omitted)). Included within the definition of a "critical stage" are pretrial investigations and plea negotiations. *See Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) ("But the Sixth Amendment's requirement that defendants receive the effective assistance of competent

counsel extends to all critical stages of a criminal proceeding, including pretrial plea negotiations." (quotation marks and citations omitted)); *Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir. 2003) (holding that the pre-trial period devoted to investigation and trial preparation is a "critical stage" that entitles a criminal defendant to the effective assistance of counsel (citations omitted)); *see also Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (noting that the *Strickland* standard applies during the plea bargaining process).

When a defendant enters a guilty plea, his counsel must perform within "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). A petitioner need not show he would have prevailed at trial, but a petitioner alleging ineffective assistance of counsel must establish his counsel's deficient performance and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (quotation marks and citations omitted).

## III.    MOTION TO VACATE

### A.  Failure To File A Motion To Suppress (Argument A)

In his first ground for relief, Sylver argues that trial counsel erroneously refused to file a pre-trial motion to suppress challenging Facebook's review of his posted content that led to the filing of the April 2022 CyberTip with HSI. Specifically, Sylver posits that Facebook "violated [his] Fourth Amendment [r]ights because they opened 2 files" that contained videos of child pornography. (Doc. No. 32-1, at 7.) He further complains that Agent Jason Guyton of HSI reviewed those files without a warrant, "violating Sylver's Fourth Amendment rights as well." (*Id.*) Sylver insists that trial counsel's failure to challenge these actions "cannot be deemed a reasonable defense or strategic [sic] to protect [his] interest[.]" (*Id.*)

As noted, to prevail on an ineffectiveness claim, a defendant must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. "Where defense counsel's 'failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent excludable evidence in order to demonstrate actual prejudice.'" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)); *see Robinson v. Howes*, 663 F.3d 819, 825 (6th Cir. 2011) (a court must assess the merits of the unpursued Fourth Amendment claim to determine whether counsel was constitutionally competent).

The Court agrees with the government that Sylver cannot demonstrate prejudice from the failure to pursue a motion to suppress because Facebook's private search did not raise any Fourth Amendment concerns. (Doc. No. 45, at 13–15.) It is well-settled that the Fourth Amendment regulates only government action. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) (citation omitted). For Facebook's private search to be attributable to the government, and thereby trigger the protections of the Fourth Amendment, "Facebook must have acted as an agent of the government at the time of the search." *United States v. Sykes*, 65 F.4th 867, 876 (6th Cir. 2023).

The Sixth Circuit addressed a situation analogous to the one now before this Court in *United States v. Miller*, 982 F.3d 412 (6th Cir. 2020). There, Google discovered that the defendant had sent a digital file containing what it determined to be child pornography, and, pursuant to its own policy, assigned the file a hash value. It then scanned the defendant's Gmail account for

evidence of the same hash value. Upon discovering such a match, it submitted a CyberTip to NCMEC with the files containing suspected child pornography. *Id*. at 417–18. The defendant was eventually charged with knowingly receiving, distributing, or possessing child pornography. He moved to suppress the files tagged by Google by arguing that Google conducted a constitutionally "unreasonable search" when it scanned his Gmail account. *Id*. at 421.

In evaluating whether Google's search was properly attributable to the government, the Sixth Circuit subjected the conduct to scrutiny under three separate tests: the "function" test, the "compulsion" test, and the "nexus" test. *Id*. at 422. The "function" test asks whether a private party performs a function that has been "traditionally *and* exclusively performed" by the government. *Id*. at 423 (quoting *Durante v. Fairlane Town Ctr*., 201 F. App'x 338, 341 (6th Cir. 2006) (further citations omitted, emphasis in original)). The court determined that, while the investigation of a crime has "long been performed by the government," it observed that it has "also long been performed by private parties protecting their property[,]" such as shop keepers. *Id*. at 423 (citations omitted). Finding that Miller failed to identify any evidence that Google was given special police powers, the court found that the search did not satisfy the "function" test. *Id*.

Next, the Sixth Circuit applied the "compulsion" test, which asks whether "the government 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the government.'" *Id*. (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)). The defendant argued that the "compulsion" test was satisfied because electronic communication service providers like Google are required to notify NCMEC when they become aware of child pornography. *Id*. at 424 (citing 18 U.S.C. 2258A(a)). Recognizing that "reporting mandates do not transform private

parties into government actors[,]" the court found that this common reporting requirement did not transform Google's private search into government action, even if Google took it one step further and voluntarily investigated the crime. *Id*. at 424–25 (citations omitted).

The court in *Miller* further found that Google's search did not have "a sufficiently close nexus" to government actors. *Id*. (quotation marks and citations omitted). Considering Google's perspective, the court observed that the defendant failed to establish that Google had any other intent than to rid its virtual spaces of criminal activity "for the same reason that shopkeepers have sought to rid their physical spaces of criminal activity: to protect their businesses." *Id*. Moreover, it noted that Google "cooperated" with the government only by honoring its reporting obligations. *Id*. It went on to consider the government's perspective, finding that Miller failed to come forward with any evidence that law enforcement influenced Google's decision to scan the defendant's Gmail account. *Id*.

Additionally, the court determined that law enforcement's review of the two files identified in Google's CyberTip did not violate Miller's Fourth Amendment rights because law enforcement's search did not exceed the scope of the private search. *Id*. at 428 (citing *United States v. Jacobsen*, 466 U.S. 109, 115, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)). In reaching this conclusion, the court reasoned that it was "virtually certain" that the officer who viewed the files identified in the CyberTip would "discover no more than what Google had learned when he viewed the images with his human eyes." *Id*. at 428–31 (citation omitted).

*Miller* controls the Court's analysis. Facebook's private search would have failed the "function" test because, just like the defendant in *Miller*, Sylver has not identified any evidence to suggest that Facebook was given special police powers. Sylver has also failed to demonstrate that

Facebook was compelled by the government to search for evidence of child pornography. While Facebook has a duty, under § 2258A, to report known instances of child pornography on its sites, it has no duty to monitor or search "for child pornography of which [it is] unaware." *Miller*, 982 F.3d at 424; *see Sykes*, 65 F.4th at 877 (finding that § 2258A did not compel Facebook to monitor its site and actively search for evidence of child pornography). As for the "nexus" test, Sylver has failed to demonstrate that Facebook acted with any intent other than to rid its site of criminal activity, or that Facebook cooperated with the government beyond honoring its reporting obligations. Moreover, there was no evidence the government influenced Facebook's decision to review Sylver's Facebook account. Additionally, Sylver would have been unable to demonstrate that agents of HSI violated his Fourth Amendment rights when they reviewed the material identified in Facebook's CyberTip because Facebook's search made it virtually certain that law enforcement would discover no more than what Facebook learned when the agents viewed the supplied files.

Because Sylver would not have prevailed on a suppression motion challenging Facebook's private search of his account, trial counsel cannot be considered ineffective for failing to bring a meritless motion. *See Ray*, 721 F.3d at 762; *see also Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010) (counsel was not ineffective for failing to raise a patently frivolous argument). Moreover, because the filing of such a motion would not have changed the outcome of the case, Sylver cannot demonstrate prejudice. *See Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003) (to establish prejudice, a defendant must demonstrate that "but for his attorney's errors, the proceedings would have produced a different result" (citing *Strickland*, 466 U.S. at 694)); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (the required showing of prejudice for ineffective assistance of counsel

14

cannot be made if the unasserted argument lacks merit (citation omitted)). This ground for relief is without merit and is denied.

### B.  Failure To File A Motion To Dismiss (Argument B)

Sylver also argues that counsel should have filed a motion to dismiss the Indictment. (Doc. No. 32-1, at 9.) According to Sylver, both charges arose out of the same conduct, and, therefore, his convictions on both counts resulted in a double jeopardy violation. (*Id*. at 10.) He argues that his trial counsel should have recognized the existence of a constitutional violation and moved to dismiss on grounds of double jeopardy or multiplicity. (*Id*. at 9–10.)

The Double Jeopardy Clause protects individuals against "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) (further citation omitted). It also protects against successive prosecutions for the same offense. *See Missouri v. Hunter*, 459 U.S. 359, 365, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983) (citation omitted). As to the former, multiplicity occurs when the government charges "a single offense in more than one count in an indictment," such that the defendant may be "punished twice for the same crime." *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) (citations omitted); Charles Alan Wright, et al., *Federal Practice and Procedure* § 142 (4th ed.) ("[M]ultiplicity may occur where the indictment charges multiple violations of the same criminal conduct.").

 "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockberger v. United*

*States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) (citations omitted). Applying the *Blockberger* test, the Sixth Circuit has held that convictions for both knowingly possessing child pornography and knowingly receiving the same child pornography can—in the absence of separate conduct—constitute multiple punishments for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment. *United States v. Dudeck*, 657 F.3d 424, 430–31 (6th Cir. 2011) (remanding for fact-based determination as to whether separate conduct was required for each conviction); *cf. United States v. Ogden*, 685 F.3d 600, 603 (6th Cir. 2012) (upholding dual convictions based on separate conduct where receipt charge was based on obtaining images by means of a computer and possession charge was based on transfer of images to an external hard drive).

Here, the Court finds the two convictions are supported by separate conduct. As the government correctly observes, the two charges applied to two entirely different time periods. (Doc. No. 45, at 16.) Count 1 charged Sylver with receiving and distributing child pornography from about February 22, 2018 to September 12, 2022. (Doc. No. 1, at 1.) Count 2 charged possession of child pornography on or about November 13, 2022. (*Id.*) Moreover, the two counts targeted different conduct. Count 1 targeted Sylver's receipt and distribution of computer files and use of virtual storage links, such as Telegram, an encrypted application Sylver used to trade child pornography with an individual in Australia and on Facebook. (Doc. No. 28, at 2–4; *see* Doc. No. 39, at 30–31.) Count 2, in contrast, addressed Sylver's possession of a Samsung cell phone that contained 119 videos and 9 images of CEM, and a Dell laptop computer that contained 39 videos and 129 image files of CEM, located during the search of his residence in November 2022. (Doc. No. 28, at 6; *see* Doc. No. 39, at 31–32; Doc. No. 1, at 1.) At the change of plea hearing, the

16

government summarized these factual distinctions while setting forth the factual basis for the charged offenses. (Doc. No. 39, at 30–32.) Sylver acknowledged that the facts—as recited by the government—were facts the government would have been able to prove at trial. (*Id*. at 32.)

Because the two charges involved different conduct, a motion to dismiss based on double jeopardy or multiplicity grounds would not have been meritorious, and Sylver's counsel was not constitutionally ineffective for failing to pursue one. *See Goff*, 601 F.3d at 469; *Burton*, 391 F.3d at 774; *see, e.g., United States v. Meek*, No. 4:20-cr-269, 2023 WL 7190540, at *6 (N.D. Ohio Nov. 1, 2023) (finding counsel was not ineffective for failing to challenge possession and receipt charges on double jeopardy grounds where the receipt charge concerned use of peer-to-peer sharing network over several years, and the possession charge related to specific images located on devices on the date of the search of defendant's residence). This ground is denied.

### C.  Failure To File A Motion To Withdraw The Guilty Plea (Argument C)

Sylver also criticizes trial counsel for failing to move to withdraw his guilty plea. He argues, in conclusory fashion, that in his case, "counsel need only file a motion to withdraw [his] guilty plea, which evidence exists in the court's records of fair and just reasons to withdraw." (Doc. No. 32-1, at 11.) He fails, however, to identify what the "fair and just reasons" would have been or what evidence in the Court's "records" would have supported such a motion. *See United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998) (The defendant bears the burden of demonstrating a "fair and just reason" to support the withdrawal of his plea (citation omitted)); *see, e.g., United States v. Bradley*, No. 20-cr-20489, 22-cv-11814, 2024 WL 385007, at *4 (E.D. Mich. Jan. 31, 2024) (denying ineffective assistance of counsel claim, and observing that "[t]rial counsel is not ineffective for failing to file a motion to withdraw a defendant's guilty plea when a defendant 'does

not set forth a reasonable or legitimate basis for the withdrawal of the plea'" (quoting *Perry v. Lazaroff*, No. 1:16-cv-225, 2016 U.S. Dist. LEXIS 185691, at *14 (N.D. Ohio Nov. 4, 2016) (only LEXIS cite available))).

Such perfunctory treatment of a ground fails to state a viable claim for relief under § 2255. A motion to vacate may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts. *See Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. Here, Sylver offers nothing more than a reference to the standard applicable to motions to withdraw a guilty plea and suggests that the Court—should it go looking on its own—will find support for such a motion somewhere in the record. It is well settled that perfunctory and undeveloped arguments, "unaccompanied by some effort at developed argumentation[,]" are waived. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (citation omitted); *see United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) (similar) (quotation marks and citation omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." (quotation marks and citations omitted)).

Even though this ground is not capable of review and is waived, the Court observes that Sylver's undeveloped arguments suffer from certain obvious problems. First, Sylver does not aver that he ever requested to withdraw his guilty plea, nor that he had ever discussed withdrawal of his plea with counsel. "An attorney's failure to move to withdraw a defendant's plea does not constitute ineffective assistance when the defendant does not clearly make such a request." *Bradley*, 2024 WL 385007, at *4. Second, even if Sylver had established a "fair and just" reason for the withdrawal, other relevant factors—including whether he had asserted or maintained his

18

innocence—would not have weighed in his favor. *See United States v. Quinlan*, 473 F.3d 273, 276–77 (6th Cir. 2007) (identifying seven non-exhaustive factors, including the existence of any claim of innocence, in determining whether to permit a defendant to withdraw his plea). Any subsequent claims of innocence would have been contradicted by Sylver's responses during the plea colloquy and in his post-plea interview with U.S. Pretrial Services. (*See* Doc. 39, at 30–35; *see, e.g., id*. at 34 (The Court: "Are you pleading guilty to the charges set forth against you in the [I]ndictment because you are in fact guilty of committing the crimes?" The Defendant: "Yes, Your Honor."); Doc. No. 24 ¶ 15 (Sylver taking "full responsibility" for his unlawful conduct).) For all of these reasons, this ground for relief is denied.

### D.  *Brady* **Duty To Disclose (Argument D)**

In another bare bones argument, Sylver posits that the government violated its duty of disclosure under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). He cites the legal standard for asserting a *Brady* violation, but then fails to offer any factual development of this ground for relief. (Doc. No. 32-1, at 13.) In particular, he neglects to identify the evidence he believes was improperly withheld by the government or explain how the failure to disclose such evidence prejudiced him. Rather, the entirety of Sylver's *Brady* argument is contained in the following two sentences:

> In Petitioner's case the Prosecutor suppressed exculpatory evidence and impeaching evidence causing prejudice. There lies a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding.

(*Id*.)

The lack of any details to flesh out this claim is contrary to Rule 2 of the Governing Rules § 2255 Motions, which requires a motion to "specify all grounds for relief available to the moving

19

party" and "state the facts supporting each ground." A motion which fails to state the supporting

facts is legally insufficient on its face and may be dismissed. *McFarland v. Scott*, 512 U.S. 849,

856, 114 S. Ct. 2568, 129 L. Ed. 2d 666 (1994) (citations omitted).

Argument D falls woefully short of stating a claim for relief, and this ground is denied.

### E.  Effectiveness During Plea Negotiations (Arguments E and F)

In Argument E, Sylver asserts that prior to changing his plea, trial counsel failed to "inform

[him] of the true nature of the charges he was pleading guilty to." (Doc. No. 32-1, at 16.) He offers

that trial counsel never informed him that, to meet its burden at trial, the government would need

to prove the charges beyond a reasonable doubt.[4] (*Id.*) He suggests that counsel's allegedly flawed

advice during plea negotiations rendered his guilty plea unknowing and involuntary. (*Id.* at 14.) In

Argument F, Sylver repeats many of the arguments from Argument E and also argues that his

waiver of the right to trial "only serves to cover up counsel's own ineffectiveness." (*Id.* at 18.)

"A guilty plea is open to attack on the ground that counsel did not provide the defendant

with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 64

L. Ed. 2d 333 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S. Ct. 1441, 25

L. Ed. 2d 763 (1970)). As noted, the same two-part standard for ineffectiveness announced in

*Strickland* applies to representation during the guilty plea process. *See Hill*, 474 U.S. at 58–59. To

show prejudice, a defendant "must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

---

[4] Sylver also complains that trial counsel failed to inform him that the charges against him for both receipt and possession of child pornography resulted in a double jeopardy violation. (*Id.*) Given that the Court has already determined that Sylver was not subjected to double jeopardy, counsel cannot be considered ineffective for failing to advise him to the contrary.

at 59.

While Sylver claims that his counsel failed to discuss the true nature of the charges against him, he is bound by his sworn representations to the Court's inquires at the change of plea hearing establishing that quite the contrary is true. *See Blackledge*, 431 U.S. at 74; *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (noting that, were a defendant not bound by his representation in open court, the plea colloquy process would be rendered meaningless). After placing Sylver under oath and confirming that he was voluntarily waiving his Fifth Amendment rights, the Court asked Sylver if he had received a copy of the Indictment, to which he replied that he had. (Doc. No. 39, at 4–5, 8.) The Court then asked Sylver whether he had been given "sufficient time and opportunity to review the indictment and discuss the charges and the case in general with [his] attorney . . .[.]" (*Id*. at 8.) Sylver responded: "Yes, I have, Your Honor." (*Id*.)

Under Fed. R. Crim. P. 11(b)(1)(G), the district court must inform the defendant of "the nature of each charge to which the defendant is pleading[.]" The "district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *United States v. Lalonde*, 509 F.3d 750, 575 (6th Cir. 2007) (quoting *United States v. McCreary-Redd*, 475 F.3d 718, 823 (6th Cir. 2007) (further quotation marks and citation omitted))). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citations omitted). "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and the elements of the charge to which he is pleading guilty." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005). "And '[t]he Supreme Court has

suggested that providing the defendant with a copy of the indictment prior to his plea of guilty creates a presumption that the defendant was informed of the nature of the charge against him.'" *United States v. Kerns*, 9 F.4th 342, 348 (6th Cir. 2021) (quoting *Lalonde*, 509 F.3d at 760 (citing *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998))). Here, the Court confirmed with Sylver that he had received a copy of the Indictment, and that he had discussed it with his attorney. "A representation on the record that defense counsel has explained the indictment is sufficient to show that a defendant had notice of the charges against him." *United States v. Thomas*, No. 24-3205, 2025 WL 417001, at *3 (6th Cir. Feb. 6, 2025) (citing *Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (further citation omitted)).

But the Court's inquiry did not end there. The Court then reviewed with Sylver the rights he was giving up by pleading guilty—including the right to require the government to prove him guilty by competent evidence beyond a reasonable doubt—and he confirmed that he understood those rights. (*See id*. at 8–11.) The Court then reviewed on the record the maximum statutory penalties for each count (and the registration requirements attached to the offenses), after which Sylver indicated that he understood the statutory penalties and registration requirements. (*Id*. at 13–21.) The Court then discussed with Sylver the applicability of the federal sentencing guidelines and asked the government to provide its estimate of the advisory sentencing range, based on possible factual scenarios. Sylver indicated that he understood the likely applicable advisory sentencing ranges. (*Id*. at 22–26.)

Next, the elements of each of the offenses were shown to Sylver (*see id*. at 27) and before they were reviewed the following exchange occurred:

> THE COURT:  Now, Mr. Christman, I trust that you have reviewed these elements with your client.

MR. CHRISTMAN: Yes, Your Honor.

THE COURT:  And do you believe he understands the elements for each offense?

MR. CHRISTMAN: I do believe he does.

(*Id.* at 27.)

The Court then gave Sylver time to read the elements as to each count and offered on two occasions to read the elements to him. (*Id.* at 27–28 and 32–33.) Additionally, Sylver informed the Court that he had a written copy of the elements of each offense as his attorney had provided it to him. (*Id.* at 32–33.)

Sylver indicated that he read and understood the elements as to each count. (*Id.* at 28–29.) The Court had Sylver review the elements for each count separately, and Sylver indicated that he read and understood the elements that the government would be required to prove as to each count. (*Id.* at 27–29.) *See Thomas*, 2025 WL 417001, at *3 (finding that, by confirming that the defendant had reviewed the indictment with his counsel and further inquiring whether defendant believed he understood the charges against him, the district court "expressly confirmed that [the defendant] understood the crime to which he was pleading guilty," thus satisfying Rule 11(b)(1)(G)). Additionally, after the elements of each count were reviewed, Sylver's counsel repeatedly represented that he believed his client understood the elements that the government would be required to prove:

THE COURT: Okay. And Mr. Christman, do you have any doubt that your client understands the elements the government would be required to prove by proof beyond a reasonable doubt relative to Count 1?

MR. CHRISTMAN: I don't have any doubt that he understands all of this, Your Honor.

23

***

THE COURT:  And Mr. Christman, similarly to Count 1, do you believe your client understands the elements for Count 2 as well?

MR. CHRISTMAN: Yes, Your Honor.

(*Id*. at 28–29.)

The Court then asked the Assistant United States Attorney ("AUSA") to state the facts that the government was prepared to prove at a trial in this case. (*Id.* at 30–32.) Sylver confirmed that he understood the facts as they were recited by the AUSA. (*Id*. at 32.) The Court then inquired whether Sylver "agree[ed] that the facts as recited by [the AUSA] are facts that the government would be able to establish by proof beyond a reasonable doubt should this case proceed to trial?" (*Id*.) Sylver indicated that he agreed. (*Id*.) Finally, the Court asked Sylver if he was pleading guilty to the charges "because [he was] in fact guilty of committing the crimes?" (*Id*. at 34.) Sylver agreed that this was the motivation for his change of plea. (*Id*.) Before accepting his plea, the Court confirmed that Sylver had previously discussed all of the matters covered in the plea colloquy with his counsel, that he was satisfied with the representation of his counsel, that he was not threatened or coerced into pleading guilty, and that he did not require any additional time to confer with counsel before formally changing his plea. (*Id*. at 33–34.)

As Sylver conceded during the Court's plea colloquy, his counsel discussed with him the "nature of the charges, the elements of the offenses that the government would have to prove at trial, the evidence that the government would present at trial, possible defenses that [he] might have, the advisory sentencing guidelines and other aspects of sentencing, the potential loss of civil rights and privileges such as the right to vote, the right to serve on a jury, and the right to possess firearms and other potential consequences of pleading guilty in this case[.]" (*Id*. at 33.) Sylver also

24

confirmed that he was informed by counsel that the government would have to establish the elements of the charged offenses beyond a reasonable doubt. (*Id*. at 9–10.) His suggestion that counsel failed to discuss these matters with him finds no support in the record.

Moreover, the Court revisited all these matters during the plea colloquy. "When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (further citation omitted)); *see Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) (approving of the observation that the "Sixth Circuit has consistently upheld the validity of the plea-colloquy advisement of rights to preclude later claims of misunderstanding alleged to result from misleading advice").

"Where the court has scrupulously followed the required [Rule 11] procedure, the defendant is bound by his statements in response to the Court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (quotation marks and citation omitted); *see Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). The Court scrupulously followed the Rule 11 procedure and Sylver is bound by his sworn statements made in response to the Court's inquiries. Based on the record, Sylver cannot claim in good faith that he misunderstood the nature of the charges to which he was pleading guilty, nor that his plea was anything other than an intelligent, knowing, and voluntary waiver of his constitutional rights. Arguments E and F, therefore, are belied by the record and are denied.

**F.   Failure To Object During Plea And Sentencing Hearings (Argument G)**

In Argument G, Sylver posits that trial counsel failed to lodge certain objections during the change of plea and sentencing hearings. In particular, he maintains that counsel was constitutionally ineffective for permitting the AUSA to introduce his own "self-incriminating [statements] at plea and sentencing hearing[s]" (Doc. No. 32-1, at 20), and that counsel "knew or should have known to file objections to the [PSR and] argue that the prosecutor breached the plea agreement." (*Id.*)

*1.   Use of Self-Incriminating Statements*

Sylver fails to specifically identify any statements that the AUSA offered in violation of Sylver's Fifth Amendment right against self-incrimination. The government correctly observes that a review of the plea transcript further fails to support a claim that the AUSA introduced during the plea hearing *any* statements made by Sylver, "much less statements obtained in violation of his constitutional rights." (Doc. No. 45, at 17–18 (citing Doc. No. 39).) Moreover, the only reference the AUSA made to any of Sylver's statements at sentencing was a brief reference to Sylver's acceptance of responsibility during his interview with the PSR writer. (*Id.* at 18 (citing Doc. No. 40, at 19 (further referencing Doc. No. 24 ¶ 15)).)[5] At the time of his guilty plea hearing, Sylver specifically and voluntarily waived his right against self-incrimination, with full knowledge that in pleading guilty he would be incriminating himself. (Doc. No. 39, at 4–5.) He waived this right again when he voluntarily agreed to be interviewed by and give a statement to the PSR writer for

---

[5] During the sentencing hearing, the AUSA discussed a statement Sylver made during his pre-sentencing interview that he was "accepting responsibility for going down a dark path," which the AUSA indicated might suggest a "momentary lapse in judgment based upon his alcoholism." (Doc. No. 40, at 19 (citing PSR).) In advocating for a within-guidelines sentence, the AUSA emphasized that Sylver's conduct spanned more than a year and involved concerted efforts to encrypt or otherwise hide his conduct, demonstrating that his conduct was not the result of one bad, impulsive decision influenced by alcohol. (*Id.* at 19–20.)

purposes of demonstrating his acceptance of responsibility under the advisory sentencing guidelines. (*See* Doc. No. 24 ¶ 15 (Adjustment for Acceptance of Responsibility).) Sylver received the full three-level reduction for acceptance of responsibility (*see id*. ¶¶ 29–30; Doc. No. 40, at 6), and it was appropriate for the AUSA to reference at sentencing any statements that Sylver made in connection with his acceptance of responsibility. Counsel cannot have been ineffective for failing to object to this acceptable and relevant use of Sylver's pre-sentencing interview.

### 2. *Objections to the PSR and the Plea Agreement*

The government also correctly observes that there was no written plea agreement; accordingly, there would have been no basis for defense counsel to argue that the government breached any agreement regarding sentencing. (*See* Doc. No. 45, at 18.) And, in any event, Sylver's conclusory statement that the government "breached the plea agreement *in a number of ways*[,]" fails to state a claim for relief under § 2255. (Doc. No. 32-1, at 20 (emphasis added).) *See McFarland*, 512 U.S. at 856; *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. Here, Sylver entered an open plea to the Indictment, and both attorneys appropriately advocated during the sentencing hearing for what they believed was an appropriate sentence. (*See generally* Doc. No. 40.) Sylver has not suggested, let alone established, that the arguments his attorney raised in support of a below-guidelines sentence—which Sylver actually received—were constitutionally ineffective.

Sylver also argues in the most skeletal way that his attorney "knew or should have known to file objections to the [PSR.]" He neglects to identify what objections, in particular, counsel should have filed or how the failure to make such objections prejudiced him. (*See* Doc. No. 32-1, at 20.) The Court need not put flesh on the bones of this perfunctory argument, and it will not

attempt do so. *See McPherson*, 125 F.3d at 995–96; *Thomas*, 849 F.3d at 679. Because Argument G fails to state a claim upon which relief can be granted, it is denied.

### G.  Failure To File A Notice Of Appeal (Argument H)

In his final asserted ground for relief, Sylver argues that counsel never "advised [him] about the advantages and disadvantages of taking an appeal or [made] a reasonable effort to discuss [his] wishes." (Doc. No. 32-1, at 23.) He also represents that, after the 2023 sentencing hearing, he requested that counsel file an appeal. (*Id*. at 21.) He argues that counsel's failure to file a notice of appeal resulted in an "adverse effect," causing him to lose the opportunity to litigate on direct appeal a number of due process arguments. (*Id*.)

In *United States v. Campbell*, the Sixth Circuit held that:

[A]n attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal.

686 F.3d 353, 360 (6th Cir. 2012). "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Id*. at 358 (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477–78, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (prejudice is presumed when counsel fails to file a notice of appeal when specifically requested to do so by his client). This is true, even in situations in which a plea agreement waived "all or most of the defendant's rights on appeal." *Campbell*, 686 F.3d at 360. Even then, "a defendant is entitled to counsel who will follow through on express instructions to proceed with an appeal, no matter what the ultimate odds of success." *Id*. at 360.

To be entitled to a delayed appeal under *Campbell*, the defendant bears "the burden to

establish by a preponderance of the evidence that he expressly requested that [his attorney] file a notice of appeal on his behalf and that [counsel] failed to do so." *United States v. Brown*, No. 5:12-cr-79, 5:14-cv-7341, 2017 WL 3022322, at *5 (E.D. Ky. July 17, 2017) (citations omitted); *see also Nix v. United States*, No. 20-6218, 2022 WL 815539, at *2 (6th Cir. Mar. 15, 2022) ("To prevail on a claim that counsel was ineffective for failing to file a direct appeal, a defendant must demonstrate that counsel either disregarded his specific instructions to file a notice of appeal or failed to consult him about an appeal." (citing *Flores-Ortega*, 528 U.S. at 477–78)); *Pola v. United States*, 778 F.3d 525, 534 (6th Cir. 2015) ("The proper inquiry is to determine whether the record and affidavits suggest that one of four scenarios occurred: (1) [the defendant] expressly requested that [counsel] file a notice of appeal; (2) a rational defendant in [the defendant's] situation would want to file an appeal; (3) [the defendant] reasonably demonstrated to [counsel] that he wanted to appeal his conviction and sentence; or (4) none of the above." (citation omitted). If the defendant presents a factual dispute, an evidentiary hearing must be held to determine the truth of the defendant's claims. *See, e.g., Pola*, 778 F.3d at 534; *Campbell*, 686 F.3d at 360.

The government argues that this ground for relief should be denied without an evidentiary hearing because Sylver has not met his burden of establishing either that he explicitly requested that his counsel file a direct appeal, or that there is a factual dispute regarding the matter. (Doc. No. 45, at 19.) According to the government, Sylver's motion contains only conclusory statements indicating that "counsel failed to file or request [an] appeal[.]" (*Id.* (citing Doc. No. 32).) The government acknowledges that Sylver offers "additional, inconsistent statements" in his supporting memorandum, but it insists that these statements are insufficient to generate a factual dispute. (*Id.*) Specifically, the government notes that Sylver represents both that he "informed his

lawyer [sic] to file a direct appeal on Double Jeopardy but his lawyer declined to do so" (*Id.* (citing Doc. No. 32-1, at 705)), and that his counsel never actually discussed an appeal even though Sylver demonstrated an interest in appealing. (*Id*. at 20 (citing Doc. No. 32-1, at 23 ("counsel never really consulted with [Sylver] about an appeal of his 168-month conviction or sentence which was imposed in an unconstitutional manner. [Sylver] reasonably demonstrated to counsel that he was interested in appealing").)).

To counter what it views as internally inconsistent statements, the government offers the affidavit of Sylver's trial counsel, Attorney Leif Christman, who averred, in relevant part:

> After sentencing, I spoke with Mr. Sylver about the pros and cons of filing an appeal. Because the Court varied downward and sentenced Mr. Sylver to a term of incarceration below his Guidelines range, I informed Mr. Sylver that an appeal would not be in his best interest. I warned Mr. Sylver that he could potentially be subject to a higher sentence. After this discussion, Mr. Sylver agreed and decided not to pursue his appeal.

(Doc. No. 45-2 (Affidavit of Leif Christman) ¶ 6.) The government argues that, in the face of "evidence sufficient to show Sylver did *not* ask his counsel to appeal" (Doc. No. 45, at 21 (citing *generally* Doc. No. 45-2 (emphasis in original)), Sylver has failed to demonstrate the existence of a factual dispute because he neglected to come forward with a "detailed and specific affidavit" that shows he is entitled to relief. (*Id*. (citation omitted).)

After the government filed its opposition brief and before Sylver's time to file a reply had expired (*see* Doc. No. 33 (Scheduling Order); Order [non-document], 10/9/2024; Order [non-document], 12/11/2024; Order [non-document], 1/2/2025), Sylver filed a document styled "Affidavit," in which Sylver made the following representations regarding his post-sentencing discussions with counsel regarding a direct appeal:

> [Attorney Christman] never talked about a direct appeal at sentencing until I asked

him after sentencing before being placed back into a holding cell in the back of the courtrooms.

\*\*\*

After sentencing, Attorney Leif Christman shook my hand and said "Take care of yourself, it was a pleasure meeting and getting to know you" [end] quote. *I then asked Leif [Christman] to file a direct appeal and he nodded his head OK*, then I was led away. There was no time for Leif [Christman] to discuss with me any pros and cons because after I was sentenced, the judge thanked everyone and remanded me back into custody.

(Doc. No. 49 (Declaration of Earnest Sylver), at 1 (emphasis added).) The statements contained in this document were declared "under penalty of perjury" to be "true and correct[,]" and the document was signed by Sylver. (*See id.*)

While the government complains that Sylver's motion and supporting memorandum were insufficient to establish the existence of a factual dispute, the Court finds that Sylver's subsequent filing adequately sets forth a factual dispute. Under 28 U.S.C. § 1746, an unsworn declaration signed under penalty of perjury to be true and correct, is given "like force and effect" to a sworn affidavit, and the conflicting statements in Sylver's "affidavit" vis-à-vis the statements in Attorney Christman's affidavit create a fact issue requiring an evidentiary hearing. 28 U.S.C. § 2255(b) ("Unless the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); *see, e.g., Christian v. United States*, No. 2:21-cv-2466, 2024 WL 3939608, at \*4 (W.D. Tenn. Aug. 26, 2024) (finding that "[b]ecause it is not clear from the record whether Christian instructed his counsel to file an appeal, an evidentiary hearing is required so the Court can determine whether an appeal was explicitly requested").

31

The Court will hold an evidentiary hearing, limited to this ground for relief, on the narrow question of whether defense counsel ignored an explicit instruction to file a notice of appeal.

## IV.    MOTION TO AMEND

After filing the present motion to vacate, Sylver sent correspondence to the Clerk's Office requesting certain materials related to his case, including transcripts from various proceedings and the contents of his attorney's client file. (Doc. No. 41 (Correspondence).) The Court directed the Clerk's Office to send Sylver information explaining the procedure for obtaining transcripts and other publicly-filed documents. (Order [non-document], 11/01/2024.) The Court also instructed the government and defense counsel to respond to Sylver's request to receive a copy of his attorney's client file. (*Id.*) After defense counsel certified that a copy of the relevant contents of Sylver's client file was sent to Sylver at his facility (*see* Doc. No. 44), the Court determined that no further action was required. (Order [non-document], 11/15/2024.)

On January 13, 2025, based in part on his review of his client file, Sylver filed a document styled, "Motion for Leave to File Supplement to 28 U.S.C. § 2255—Pursuant to Fed. R. Civ. P. 15(a)(2)." (Doc. No. 50.) The Court directed the government to file a response, and, before the date for the government's response, Sylver filed a document purporting to contain "supplemental facts." (Order [non-document], 1/22/2025; Doc. No. 51 (Supplement).) The document, itself, contained predominately argument and case law. (*See generally* Doc. No. 51.) Appended to the document were a number of exhibits, including a declaration from Sylver, which included additional factual allegations.[6] (*See* Doc. No. 51-3.) The government subsequently filed its

---

[6] The appended declaration is styled "Defendant's Declaration in Reply to the Government's response to the Defendant's 28 U.S.C. § 2255." (Doc. No. 53-1, at 1 (capitalization omitted).) Given that it was appended to Sylver's supplement, it is unclear whether Sylver intended this declaration to serve as his reply to his motion to vacate or as

opposition, seeking to strike the supplement on the ground that Sylver failed to seek leave to amend under Rule 15(a). (Doc. No. 52, at 1.) Sylver responded by filing a document styled "Motion for Leave to Amend Defendant's 28 U.S.C. § 2255." (Doc. No. 53.) The government opposed the motion to amend as well (Doc. No. 54), and Sylver filed a reply. (Doc. No. 55 (Reply to Motion to Amend).)

The government correctly observes that it is unclear from Sylver's filings whether he is requesting leave to amend the § 2255 motion or to supplement the record. (*See* Doc. No. 52, at 2.) Nevertheless, the Court is required to apply a liberal construction to pleadings filed by *pro se* litigants. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard" (citation omitted)). Applying such a construction, the Court finds that Sylver's post-motion filings are properly interpreted collectively as a motion to amend his motion to vacate under Fed. R. Civ. P. 15(a).

A motion to amend a § 2255 motion is governed by Fed. R. Civ. P. 15. 28 U.S.C. § 2242; *see Oleson v. United States*, 27 F. App'x 566, 568 (6th Cir. 2001) (applying Rule 15 to a § 2255 motion). Per Rule 15(a), a court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge[.]" *Robinson v. Michigan Consol. Gas Co. Inc*., 918 F.2d 579, 591 (6th Cir. 1990) (citation omitted). Despite Rule 15(a)'s "liberal policy of permitting amendments to ensure the determination of claims on their merits[,]" *Marks v. Shell Oil Co*., 830 F.2d 68, 69 (6th

---

support for his supplement. Whether it is treated as part of the briefing on the § 2255 motion or the motion to amend is of no consequence, as the treatment of this document does not affect the Court's analysis of the pending motions.

Cir. 1987), leave to amend should "be denied if the amendment would be futile[.]" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009) (quotation marks and citation omitted). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citation omitted). The Sixth Circuit has held that an attempt to amend a § 2255 motion is also futile if it is barred by the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255(f)(1). *See Oleson*, 27 F. App'x at 570.

Liberally construing Sylver's request to amend, the Court finds that Sylver is seeking leave to add two additional grounds for relief, alleging: (1) counsel was ineffective for failing to file a motion to suppress the fruits of the 2022 search of the nineteen-year-old male's cell phone by Australian authorities; and (2) counsel was ineffective for failing to challenge the application of U.S.S.G. § 2G2.2(b)(4) to his advisory guidelines sentencing range. (*See generally* Doc. No. 51.) The Court finds that permitting Sylver to amend his § 2255 motion would be futile because these new grounds are time-barred and because Sylver has otherwise failed to state a claim for relief.

### A.  The New Grounds Are Time-Barred

A prisoner seeking to add a claim to his § 2255 motion generally must do so within the one-year limitations period set forth in § 2255(f). *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Any attempt to raise a new claim for [habeas] relief in a Rule 15 motion to amend pleadings is subject to [a] one-year statute of limitations.") Under § 2255(f), a prisoner must file his § 2255 motion within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if

34

the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the judgment of conviction, as amended, was entered on September 26, 2023. (Doc. No. 31.) Because Sylver did not appeal his conviction or sentence, the one-year statute of limitations period began to run 14 days later on October 10, 2023. *See Johnson v. United States*, 457 F. App'x 462, 465 (6th Cir. 2012); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); Fed. R. App. P. 4(b)(1). To be timely filed, a claim must have been filed by October 10, 2024. Because the earliest date Sylver sought leave to amend was January 13, 2025, the motion is not timely under § 2255(f)(1).

Additionally, Sylver does not maintain that he has filed his request to amend within one year of the lifting of an impediment created by governmental action (*see* § 2255(f)(2)), nor does he suggest that his newly proposed claims are premised on a right that was originally recognized by the United States Supreme Court (*see* § 2255(f)(3)). Instead, he states that he is relying on "newly discovered facts[.]" (Doc. No. 53, at 1.) He fails, however, to identify what these newly discovered facts might be, or explain how he was unable to discover them earlier through the exercise of due diligence. Without more, he cannot rely on § 2255(f)(4) to render his request

timely.[7]

Even if the proposed claims are filed outside the one-year limitations period, they may be considered timely if they "relate back" to the original habeas petition. *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005) (applying the relation back provision for amendments under Fed. R. Civ. P. 15(c)(2) to habeas petitions). An amended motion to vacate does not relate back (and thereby escape the one-year time limit set forth in § 2255(f)) "when it asserts a new ground for relief supported by facts that differ in both time and type" from those set forth in the original pleading. *Mayle*, 545 U.S. at 650. Stated differently, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id*. at 659.

The Court finds that Sylver's proposed claims do not "relate back" to the claims asserted in the original § 2255 motion. Beginning with the foreign search by Australian authorities, Sylver suggests, without elaboration, that his review of the warrants and other relevant documents revealed "numerous Fourth Amendment [v]iolations[.]" (Doc. No. 50, at 1.) He fails, however, to identify these violations. Instead, elsewhere he complains that "[a]part form contact data of the Australian investigator responsible for the report, no chain of custody information, investigative data or technical data was provided and was never explored or investigated by Mr. Sylver's attorney." (Doc. No. 51, at 1–2.) According to Sylver, he was essentially asked to "take Australia's and the U.S. Government's word that proper procedure and investigation was followed, with no questions of rights or due process raised throughout the whole course of proceedings." (*Id*. at 2.)

---

[7] Additionally, the Court observes that § 2255(f)(4) applies to the discovery of "new facts," and not to the recognition of a new theory of law. *See Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013) (Section 2255(f)(4) is "directed at the discovery of new facts, not newly discovered law[.]")

Even based on these generalized descriptions of his new claim that counsel failed to file a motion to suppress, however, it is clear that Sylver's proposed claim is not similar in type and time to the asserted ineffectiveness claim raised in the original petition relating to an unfiled suppression motion. As set forth above, Sylver's first asserted ground for relief (Argument A) took issue with counsel's failure to challenge Facebook's search of his account as government action. The newly minted ineffective claim focuses on the prior searches of a different individual by the Australian government, addressing entirely different conduct by a foreign actor. *See, e.g., Collier v. United States*, No. 1:08-cv-119, 1:06-cr-57, 2011 WL 703932, at *6 (E.D. Tenn. Feb. 17, 2011) (rejecting argument under Rule 15 that new ineffective assistance and due process claims related back to original claims in § 2255 motion where the "amended motion introduces different theories of due process and ineffective assistance based on facts different from those underlying the timely due process and ineffective assistance of counsel claims"); *see also United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016) (claim in an amended petition that appellate counsel was ineffective in not challenging the drug amounts used to calculate the petitioner's base offense level "was an entirely new claim" from the ineffective assistance of counsel claim in the original petition based on counsel's failure to challenge a career offender enhancement). Because this proposed amended claim does not share "a common core of operative facts" with the ineffective assistance claims raised initially, the new claim does not relate back.

Sylver's new ineffectiveness claim based on the advisory sentencing guidelines likewise relies on facts that are both different in type and time to the ineffectiveness claims asserted in the original motion. Specifically, Sylver now appears to take issue with counsel's failure to challenge the application of U.S.S.G. § 2G2.2(b)(4) at sentencing because there was no evidence that he had

37

direct sexual contact with the victims. (Doc. No. 51, at 4.) The only claim in the original motion that addresses counsel's representation at sentencing (Argument G), challenges counsel's failure to object to the government's use of self-incriminating statements and alleged plea agreement violations. (*See* III. F. *supra*.) This ground for relief includes a perfunctory reference to counsel's failure to file objections to the PSR, but this portion of the ground is an entirely undeveloped argument that is waived, and, therefore, Sylver's newly proposed claim cannot relate back to it. *See Hill v. Mitchell*, 842 F.3d 910, 924–25 (6th Cir. 2016) (new *Brady* claim cannot be said to share a common core of operation facts with original "catch-all" *Brady* claim where original claim was broad, unsupported, and undefined). This new ground is also time-barred.

### B.  The New Grounds Fail To State A Claim For Relief

Even if the proposed grounds were not untimely, amendment would still be futile because they would be subject to dismissal. As set forth above, Sylver's representation that his review of the relevant warrants and supporting affidavits have uncovered "numerous Fourth Amendment [v]iolations" that his attorney failed to challenge (*see* Doc. No. 50, at 1), is too vague and conclusory to establish a right to relief under § 2255. *See McFarland*, 512 U.S. at 856 (A § 2255 motion that fails to state the supporting facts is legally insufficient on its face and may be dismissed). And neither Sylver's unsubstantiated complaint that his counsel simply took the government's word that these foreign searches were lawful, nor his belief that his counsel appeared to him to be more concerned about securing his retainer than providing effective representation (*see* Doc. No. 51, at 2), sets forth with particularity facts that support a right to relief under § 2255. *See Worley v. United States*, 2:15-cr-12, 2:15-cv-305, 2018 WL 5984202, at *2 (E.D. Tenn. Nov. 14, 2018) ("A motion that merely states general conclusions of law without substantiating

allegations with facts is without legal merit." (citing *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996))).

Moreover, Sylver also fails to explain how he would have standing to challenge the searches of the Australian man's cell phone. A defendant has the burden of establishing Fourth Amendment standing to object to the property searched based on a privacy or property interest. *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022); *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001) (citations omitted); *see also United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) ("A defendant's standing is determined independently from his co-defendant's standing with regard to the same items and places that are searched."); *United States v. Padilla*, 508 U.S. 77, 81, 113 S. Ct. 1936, 123 L. Ed. 2d 635 (1993) ("It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment Rights were violated by the challenged search or seizure." (emphasis in original) (collecting cases)). Without standing to challenge the search of another person's cell phone, Sylver would be unable to demonstrate that his counsel was constitutionally ineffective for failing to raise such a challenge. *See also United States v. Major*, 5:22-cr-27, 2022 WL 16796871, at *3 (W.D. Ky. Sept. 23, 2022) ("To establish standing to challenge the search of a cell phone, courts require a defendant to offer evidence demonstrating that he owned, possessed, or used the cell phone that was searched[.]" (collecting cases)).

Sylver's objection relating to the application of § 2G2.2(b)(4), in turn, is based on an improper reading of the guideline and would fail on the merits. Section 2G2.2(b)(4) provides "if the offense involved *material* that portrays (A) sadistic or masochistic conduct or other depictions

of violence; or (B) sexual abuse or exploitation of an infant or toddler, increase by 4 levels." U.S.S.G. § 2G2.2(b)(4) (emphasis added). It is clear from the plain language of the guideline that the charged individual need not have physically participated in actual sexual contact with the victim. Moreover, at sentencing, the Court adopted the portions of the PSR finding that the images in question "depicted child exploitation material, material involving infants, prepubescent minors and sadistic or masochistic conduct[,]" thus satisfying the guideline enhancement. (Doc. No. 40, at 10 (citing Doc. No. 24); *see* Doc. No. 24 ¶ 9.) Sylver's conclusory allegation that his attorney "simply accepted such an assessment, apparently more concerned about" another case (*see* Doc. No. 51, at 4), fails to establish that his counsel was constitutionally ineffective for failing to raise a groundless objection under the sentencing guidelines.[8] *See, e.g., Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *United States v. Frye*, 831 F.2d 664, 669 (6th Cir. 1987) (failing to raise a meritless objection at sentencing does not constitute ineffective assistance).

Because the proposed grounds are time-barred and entirely without merit, Sylver's motion to amend is denied.[9]

---

[8] Sylver appends to his supplement an email exchange between defense counsel and the AUSA, wherein defense counsel advises the AUSA that he expects Sylver to make an open plea with the attorneys reserving arguments regarding any appropriate sentence in the matter. (Doc. No. 51-4.) In this same email, defense counsel indicates that that he is "more concerned" about the sentencing of a different client because this client's guideline calculation is "ugly" due to a prior conviction. (*Id.*) The email does not, as Sylver suggests, demonstrate his counsel was neglecting his duties to Sylver.

[9] To the extent Sylver seeks leave to supplement the record, the motion is also denied. Rule 15(d) governs requests to supplement pleadings and provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Sylver is not entitled to supplement his motion because he has not identified a "transaction, occurrence, or event that happened" after the date he filed his motion. *Id.* Rather, he

40

## V.      CONCLUSION

For the foregoing reasons, Sylver's motion to amend (*see* Doc. Nos. 50, 51, 53) is DENIED, and the government's motion to strike (Doc. No. 52) is DENIED AS MOOT. Sylver's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 32) is DENIED IN PART. The parties are hereby ORDERED to appear for an evidentiary hearing at a date and time to be announced by separate order for the purpose of addressing the limited question of whether trial counsel ignored an instruction from Sylver to file a notice of appeal, as set forth in Argument H of the § 2255 motion. All other grounds for relief (Arguments A–G) are DENIED. In accordance with Rule 8(c) of the § 2255 Rules, the Court will appoint counsel to represent Sylver in connection with the evidentiary hearing. 18 U.S.C. § 3006A.

It is further ORDERED that the United States Marshal, or his authorized deputy, transport Sylver from his place of incarceration to the Northern District of Ohio, allowing sufficient time for Sylver to be available in this judicial district to meet with his appointed attorney before the evidentiary hearing.

**IT IS SO ORDERED**.


Dated: April 7, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

merely identifies additional facts relating to defense counsel's representation during the criminal proceedings through sentencing (*see* Doc. No. 51; Doc. No. 51-4), all of which occurred *prior* to the filing of the pending motion to vacate.