# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-708 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| EARNEST SYLVER, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On April 7, 2025, the Court entered a Memorandum Opinion and Order denying, in substantial part, the motion of defendant Earnest Sylver ("Sylver") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 56; *see* Doc. No. 32 (§ 2255 Motion).) In so ruling, the Court reserved for an evidentiary hearing and further consideration "the limited question of whether Sylver's trial counsel ignored an instruction to file a notice of appeal." (Doc. No. 56, at 1; *see also id*. at 28–32.) On June 5, 2025, in accordance with *Campbell v. United States*, 686 F.3d 353 (6th Cir. 2012), the Court conducted an evidentiary hearing on this narrow issue. At the conclusion of the hearing, the Court took the matter under advisement. (Minutes of Proceedings [non-document], 6/5/2025.) For the reasons that follow, the Court denies Sylver relief on the remaining claim in his § 2255 motion and denies a certificate of appealability.

## I. BACKGROUND

The Court set forth the factual and procedural background of this case in detail in its April 7, 2025 ruling and will only provide enough background to frame the remaining issue on review.

In January 2023, Sylver retained Attorney Leif B. Christman ("Attorney Christman") to defend him on a two-count federal indictment in which he was charged, as follows: receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (Count 1); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). (Doc. No. 1 (Indictment); Doc. No. 16 (Notice of Appearance).) On April 26, 2023, Sylver entered an open plea of guilty (without a plea agreement) to the indictment. (Minutes of Proceedings [non-document], 4/26/2023.)

On September 25, 2023, the Court sentenced Sylver to a custody term of 168 months. (Minutes of Proceedings [non-document], 9/23/2025; *see* Doc. No. 29 (Judgment); Doc. No. 31 (Amended Judgment).) In arriving at its sentence, the Court varied downward one level from the advisory guideline range. (Doc. No. 40 (Sentencing Hearing Transcript), at 33–34.) At the conclusion of the hearing, the Court informed Sylver that he had a right to appeal his conviction and sentence, and that "with few exceptions any notice of appeal must be filed within 14 days of the entry of this Court's judgment." (*Id*. at 46.) Sylver stated that he understood "all that [the Court conveyed] relative to [his] right to appeal[.]" (*Id*.)

Sylver did not take a direct appeal. Instead, on September 23, 2024, he filed the present motion to vacate, in which he raised eight claims. (*See generally* Doc. No. 32-1 (Memorandum in Support).) Though it is not entirely clear, the memorandum in support indicates that it was prepared with the assistance of a paralegal. (*Id*. at 27.) As previously noted, the Court denied Sylver relief on seven of the eight claims, and reserved the eighth claim—referred to in the briefing as "Argument H"—for an evidentiary hearing. The Court appointed counsel for Sylver, and arranged for Sylver's return to this judicial district in advance of the hearing so that appointed counsel could

2

meet with Sylver and prepare for the hearing. (CJA 20 Appointment of Attorney John W. Greven, 4/10/2025.)

## II.     EVIDENTIARY HEARING

Two witnesses testified at the June 5, 2025 hearing: Attorney Christman and Sylver. The undersigned presided over the hearing and had the opportunity to closely observe the witnesses as they testified. Attorney Christman testified that he has served as a criminal defense attorney for approximately 25 years and regularly practices in federal court. With respect to his representation of Sylver, Attorney Christman testified that he reviewed the discovery with Sylver and discussed with him how he wanted to resolve the case. Sylver ultimately determined that he wanted to enter a guilty plea to the charges.

Immediately after sentencing, and consistent with his practice, Attorney Christman had a discussion with Sylver about his appellate rights. Attorney Christman believed that this conversation took place in the courtroom at counsel table.[1] He told Sylver that, because the Court imposed a below-guideline sentence (even though they had both hoped the Court would vary downward even further), an appeal was not likely to be successful. He explained that the government could, in fact, argue that the sentence should have been at least a guideline sentence or above. At the conclusion of this discussion, Sylver indicated that he did not wish to pursue an appeal.

Attorney Christman testified that after sentencing, he had some communications with Sylver's significant other, Chelley Brooks, about other matters including Sylver's request for a

---

[1] Attorney Christman explained that, depending on how soon the Marshals need to return the defendant to his facility, he will either meet with a client in the courtroom or down in the Marshals' lock-up.

3

copy of his client file. Attorney Christman remembered supplying Sylver with the requested materials. Nearly five months after sentencing, Ms. Brooks also inquired whether he had filed an appeal for Sylver. Their exchange was captured in a string of text messages—the first occurring on March 13, 2024—and screenshots of the messages were introduced at the hearing. (Doc. No. 57 (Gov't Ex. 1).) In these messages, Attorney Christman explained that, based upon his discussion with Sylver immediately after sentencing about the low likelihood of success of appealing a below-guideline sentence, he did not file an appeal. (*Id*. at 1–2.) Attorney Christman had no recollection of Sylver ever asking him to file an appeal.

Further, Attorney Christman testified that, had Sylver made such a request, he certainly would have honored it and filed a notice of appeal. Regardless of whether he personally believes a client would prevail on appeal, Attorney Christman stated that if a client tells him to file a notice of appeal, he will always do it. He explained that preparing such a filing is "routine paperwork" that is "not a big deal," and that he will always honor his client's desires relative to filing an appeal, even if they run counter to his own professional judgment.

Sylver also testified at the hearing. He agreed that he spoke with Attorney Christman at counsel table immediately after the sentencing hearing concluded. Sylver testified that after Attorney Christman told him to take care and that it had been a pleasure meeting him and getting to know him, the two shook hands. According to Sylver, that's when he told Attorney Christman to "file a direct appeal," as he was being led away from the courtroom by the U.S. Marshals. In response, Attorney Christman silently nodded his head, which Sylver took as a gesture of assent. Sylver insisted that there was no time for him and his attorney to discuss the "pros and cons" of appealing because he was immediately removed from the courtroom and placed in a holding cell.

4

Sylver explained that, from the moment the Court advised him that he had a right to appeal his sentence, it was his "whole focus" and his singular "goal" to "make sure [he] asked [Attorney Christman] to file a direct appeal." He conceded, however, that he did not follow up with Attorney Christman at any time in the days and weeks after his sentencing to ensure that Attorney Christman had filed a notice of appeal. Sylver explained that he just "figured [Attorney Christman] had done it." He further admitted that it was not until five months later that he asked Ms. Brooks to inquire whether Attorney Christman filed a notice of appeal. Sylver underscored that he was not trained in the law, and did not, therefore, know the appeals process.

Sylver initially testified on cross-examination that Attorney Christman did not review the presentence investigation report ("PSR") with him prior to the sentencing hearing. When confronted with his statements at the sentencing hearing that counsel did review the PSR with him, he backed off his original testimony and admitted that he "probably did" say that at the hearing, but that he could not "remember back that far." He explained that he "only remember[ed] what happened on the narrow question of when I asked him to file a direct appeal."

## III.    LAW AND DISCUSSION

In *United States v. Campbell*, the Sixth Circuit held that:

> [A]n attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal.

*Campbell*, 686 F.3d 353, 360 (6th Cir. 2012). "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Id*. at 358 (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477–78, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (prejudice is presumed when counsel

fails to file a notice of appeal when specifically requested to do so by his client). This is true, even in situations in which a plea agreement waived "all or most of the defendant's rights on appeal." *Campbell*, 686 F.3d at 360. Even then, "a defendant is entitled to counsel who will follow through on express instructions to proceed with an appeal, no matter what the ultimate odds of success." *Id*. at 360.

To be entitled to a delayed appeal under *Campbell*, the defendant bears "the burden to establish by a preponderance of the evidence that he expressly requested that [his attorney] file a notice of appeal on his behalf and that [counsel] failed to do so." *United States v. Brown*, No. 5:12-cr-79, 5:14-cv-7341, 2017 WL 3022322, at *5 (E.D. Ky. July 17, 2017) (citations omitted); *see also Nix v. United States*, No. 20-6218, 2022 WL 815539, at *2 (6th Cir. Mar. 15, 2022) ("To prevail on a claim that counsel was ineffective for failing to file a direct appeal, a defendant must demonstrate that counsel either disregarded his specific instructions to file a notice of appeal or failed to consult him about an appeal." (citing *Flores-Ortega*, 528 U.S. at 477–78)).

The Court concludes that Sylver did not request that his trial attorney file an appeal in the present case. The parties agree that this issue comes down to credibility, and the Court credits the testimony of Attorney Christman. He testified credibly that, consistent with advice he often gives a defendant who pled guilty and received a below-guidelines sentence, he advised Sylver that the likelihood of success on appeal was low and Sylver agreed he did not want to pursue an appeal. Attorney Christman's testimony was corroborated by the text messages he exchanged with Sylver's significant other in March 2024 regarding his conversation with Sylver immediately after sentence was imposed. His explanation of his representation of Sylver was consistent with a professional and effective approach to representing a criminal defendant charged with serious

crimes who was facing significant prison time.

In contrast, the Court does not credit Sylver's testimony. It was clear from his demeanor on the witness stand and the language he used to describe his prior conversation with counsel that he was not testifying in a truthful fashion, but was instead offering self-serving statements designed to support an argument recently crafted for purposes of habeas review. For example, the Court finds it telling that Sylver testified repeatedly he told Attorney Christman to file a "*direct* appeal" and not simply an "appeal." It seems unlikely that a criminal defendant who has just been informed of his right to appeal his sentence and, admittedly, was not trained in the law, would turn to his counsel and instruct him to file a "direct appeal." Even appointed counsel agreed that the phraseology was odd. It was, after all, a rather sophisticated legal distinction to make for someone who claimed to be unfamiliar with the appeals process. The Court finds it much more likely that Sylver discovered the nomenclature for the various appeals when he began working with a paralegal to prepare his motion to vacate and tailored his post-hoc version of the conversation with counsel to support the motion.

The Court was also unimpressed when Sylver feigned memory loss when confronted with inconsistencies between his statements at sentencing and during the evidentiary hearing. Sylver's suggestion that he could not remember back to his sentencing hearing but could remember with perfect clarity the brief conversation that occurred in the moments immediately after the hearing rings especially hollow. Likewise, his suggestion that he was "whol[ly] focus[ed]" on ensuring that he ask his counsel to file a direct appeal but failed to follow up on his request for five months— again, until he was likely preparing his motion to vacate—lacks any indicia of reliability. In sum, the Court did not believe Syler's testimony.

Having determined that Sylver never requested that his trial counsel file an appeal from his conviction and sentence, the Court finds that Sylver has failed to meet his burden of demonstrating that he received ineffective assistance from his trial counsel. He is, therefore, not entitled to relief in the form of a delayed appeal.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Sylver's final ground for collateral relief (Argument H), and his motion to vacate, set aside, or correct his sentence is denied in full. Further, the Court has detailed above, and in its April 7, 2025 Memorandum Opinion and Order (*see* Doc. No. 56), how Sylver's claims in his § 2255 motion are without merit and/or are belied by the record such that "reasonable jurists" would not debate the Court's denial of his motion. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Additionally, for the reasons discussed herein, the Court further concludes that "jurists of reason" would not find it "debatable whether the [§ 2255 motion] states a valid claim of the denial of a constitutional right" or that the Court's findings that certain claims are either not cognizable on collateral review or alluded to in a perfunctory manner, thus precluding further review, are "correct[.]" *Id.* Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: June 23, 2025

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

8