UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-708 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| EARNEST SYLVER, | ) | |
| | ) | |
| Defendant. | ) | |

On April 7, 2025 and June 23, 2025, the Court entered orders denying the motion of *pro se* defendant Earnst Sylver ("Sylver") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 56 (Memorandum Opinion and Order) (addressing first seven grounds for relief); Doc. No. 58 (Memorandum Opinion and Order) (addressing eighth ground for relief after evidentiary hearing); Doc. No. 59 (Judgment Entry); *see* Doc. No. 32 (Motion to Vacate) and related documents (Doc. Nos. 50, 51, 53). As part of its ruling, the Court declined to issue a certificate of appealability. (*See* Doc. No. 59.)

On appeal to the Sixth Circuit, Sylver moved for a certificate of appealability to challenge the Court's denial of his motion to vacate. (*See* 6th Cir. Case No. 25-3690, Doc. No. 16 (Motion for Certificate).) This motion remains pending with the Sixth Circuit.[1]

Now before the Court are three motions filed by Sylver: (1) a request for docket entries,

---

[1] Sylver also filed a second motion to vacate, raising various sentencing issues under the United States Sentencing Guidelines. (Doc. No. 60 (Second Motion to Vacate).) The Court transferred the motion to the Sixth Circuit as a second or successive habeas petition. (Doc. No. 61 (Order of Transfer).) On October 9, 2025, the Sixth Circuit granted Sylver's motion to dismiss this subsequent appeal. (6th Cir. Case No. 25-3643, Doc. No. 8 (Order of Dismissal).)

plea agreement, and sentencing transcripts (Doc. No. 67); (2) a motion to obtain a copy of the detention hearing transcript (Doc. No. 68); and (3) a motion for disclosure of grand jury transcripts (Doc. No. 69). With respect to the request for grand jury transcripts, Sylver indicates that he is "in the process of writing a [Rule] 60(b) motion." (Doc. No. 69, at 1.[2]) The government filed an omnibus response to Sylver's motions. (Doc. No. 70 (Response).)

**Docket Entries, Plea Agreement, and Hearing Transcripts**

Sylver requests, at the government's expense, copies of docket entries, the plea agreement, and the transcript from the sentencing hearing "pursuant to the Fifth Amendment to the Constitution along with the Federal Rules of Appellate and Civil Procedure." (Doc. No. 67, at 1.) He also requests a free copy of his detention hearing, representing that the transcript is "needed to support claims related to pretrial detention, ineffective assistance of counsel, or constitutional violations, and is necessary for further filings, including post-conviction relief." (Doc. No. 68, at 1.)

In limited circumstances, an indigent defendant has a statutory right to court documents including transcripts at the government's or the public's expense, pursuant to 28 U.S.C. § 753(f) and 28 U.S.C. § 2250, provided the court "certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C. § 753(f). In order for the court to decide that the appeal is not frivolous, a defendant must make a sufficient showing of a "facially viable claim." *United States v. Dickinson*, No. 1:14-cv-35, 2015 WL 5376460, at *3 (S.D. Ohio Sept. 14, 2015) (citing *United States v. MacCollom*, 426 U.S. 317, 326,

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2

96 S. Ct. 2086, 48 L. Ed. 2d 666 (1976)).

In the present case, Sylver has failed to demonstrate that he is entitled to a free copy of the hearing transcripts for two reasons. First, there is currently pending no motion for substantive relief from the Court's judgment. As a general rule, transcripts may not be obtained before the filing of a motion to vacate under § 2255 or some other post-conviction motion, such as a motion for reconsideration under Rule 60(b). *See Corrigan v. Thomas*, 55 F. App'x 754, 756 (6th Cir. 2003) ("[F]ederal prisoners are not entitled to obtain a transcript . . . at government expense under 28 U.S.C. § 753(f) for the purpose of preparing a motion to vacate when there was no motion to vacate sentence pending" (citing *Ketcherside v. United States*, 317 F.2d 807, 808 (6th Cir. 1963) (per curiam)). Second, Sylver has failed to demonstrate the existence of a facially viable claim, or explain in more than general terms why he is requesting the material. His dual explanations that the transcripts are needed to support vaguely alluded to claims and that he is unable to pay for transcripts are insufficient.[3] *Amadasu v. Mercy Franciscan Hosp.*, 515 F.3d 528, 530 (6th Cir. 2008) ("Conclusory allegations in support of a request for free transcripts do not satisfy" § 753(f) (citing *MacCollum*, 426 U.S. 327)).

As to his request for his plea agreement, there was no written plea agreement in Sylver's criminal action. Rather, Sylver entered an open plea during his change of plea hearing. (Doc. No. 39 (Change of Plea Hearing Transcript), at 2; *see* Doc. No. 21 (Notice of Intent to Plea without Proposed Plea Agreement).) The Court will, however, direct the Clerk of Courts to provide Sylver with a copy of the docket in this case and instructions for obtaining hearing transcripts at his

---

[3] Additionally, to the extent these materials are sought in connection with his pending appeal, Sylver did not request these materials from the Sixth Circuit. As the government correctly observes, the Sixth Circuit has procedures available whereby *pro se* litigants can request transcripts using CJA funds. (Doc. No. 70, at 2 (citing https://www.ca6.uscourts.gov/sites/ca6/files/documents/forms/CaseOpTranscript.pdf).)

expense. With that limited exception, the motion is denied.

**Grand Jury Transcripts**

Because grand jury proceedings are secret, a party seeking disclosure of grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure must demonstrate a particularized need. *See Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 211, 222, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979) (citation omitted); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–83, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958) (In order to break the "indispensable secrecy of grand jury proceedings[,]" a moving defendant must establish a "particularized need." (citation omitted)). To meet the particularized need standard, a party must establish that: (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured narrowly to cover only the material needed. *See Douglas Oil Co.*, 441 U.S. at 222 (citation omitted). The district court has considerable discretion in determining whether to require disclosure of grand jury proceedings. *See id.* at 223; *In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (same). "It is clear that [the] burden [of demonstrating the need for disclosure] is a heavy one to overcome." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984).

Sylver's only justification for the release of the grand jury transcripts is his belief that Homeland Security Special Agent Jayson Guyton "falsified perjured statements regarding Sylver's criminal history of kidnapping and domestic violence that is not a part of Sylver's criminal history because he was never convicted of these crimes. Sylver feels he can show a particularized need for his post[-]conviction [sic] through possible Government misconduct." (Doc. No. 69, at 1.) Appended to his motion is a Homeland Security report summarizing the investigation into Sylver's online activities that was prepared by Special Agent Guyton. In this report, Special Agent Guyton

4

indicates that Sylver "has [a] significant criminal history to include [sic] domestic violence, kidnapping and DUI[]s." (Doc. No. 69-1, at 2.) Sylver insists that this statement is untrue. (*See* Doc. No. 69, at 1.) In fact, Sylver does have a significant criminal history that includes multiple convictions for impaired driving (Doc. No. 24 (Presentence Investigation Report), at 9–10, 13 ¶¶ 35, 41, 43, 52). He also has a history of domestic violence. In 2010, he was convicted of menacing for a domestic incident with wife wherein he damaged her property and threatened to hurt her if she left him (*id*. at 11 ¶ 44), and he was charged with violating a protection order obtained by his wife, though the charges were eventually dismissed. (*Id*. at 14 ¶ 57.) Nevertheless, his criminal history does not appear to include a kidnapping conviction. Due to this factual inaccuracy in Special Agent Guyton's unsworn internal report, Sylver insists that he must have given perjured testimony before the grand jury. (Doc. No. 69, at 1.)

As further evidence of what he believes is government misconduct, Sylver references the portion of the report discussing the information Homeland Security received from Australian authorities. In particular, the report provides that Homeland Security was first alerted to Sylver by the Australian Federal Police, who discovered that an Australian male suspected of online child abuse had exchanged encrypted online communications regarding child pornography with a man living in Bedford Heights, Ohio, who would later be identified as Sylver. (*See* Doc. No. 69-1.) Sylver alleges that the government withheld information from the defense regarding the collaboration of Homeland Security and the Australian Federal Police. (Doc. No. 69, at 1.)

There is no evidence that the government withheld any information regarding Homeland Security's interactions with the Australian Federal Police. Rather, this aspect of the government's investigation was discussed at length at the change of plea hearing and in pre-sentencing filings. (Doc. No. 39, at 30–31 (government setting forth the facts, including its investigation and

information derived from Australian Federal Police); *see* Doc. No. 24, at 3 ¶¶ 5–6 (discussing communication with the Australian Federal Police); Doc. No. 28 (Government's Sentencing Memorandum), at 1–2 (similar)). In fact, Sylver admits that he first became aware of this issue while reviewing "his discovery material[,]" demonstrating that the report, itself, was produced during discovery. (*See* Doc. No. 69, at 1.)

Further, Sylver's suggestion that this collaboration with Australian officials was unlawful is also without support. (*See* Doc. No. 69, at 1.) Sylver cites *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2005) (*see id.*), but his reliance on this Ninth Circuit decision is misplaced. In *Clark*, the court addressed whether "Congress exceeded its authority 'to regulate Commerce with foreign Nations,' U.S. Const. art. 1, § 8, cl.3, in enacting a statute that makes it a felony for any U.S. citizen who travels in 'foreign commerce,' i.e. to a foreign country, to then engage in an illegal commercial sex act with a minor. 18 U.S.C. § 2423(c)." *Clark*, 435 F.3d at 1102. The court answered the question in the negative, concluding that "Congress acted within the bounds of its constitutional authority." *Id*. Sylver was not charged with violating § 2423(c), and there is nothing about that non-binding decision that calls into question Sylver's convictions under 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(5)(B) for sexual crimes committed in the United States.[4] Equally unavailing is Sylver's reference to 18 U.S.C. § 2518(10)(a)(i), as there was no wiretap in this case.

Accordingly, the factual error in Special Agent's summary report is insufficient to pierce the secrecy of the grand jury proceedings. Sylver has, therefore, failed to satisfy his heavy burden of demonstrating a particularized need for the grand jury transcripts. His motion to require

---

[4] Presumably, Sylver cites *Clark* because the background facts suggest that the United States "assisted" the Cambodian National Police and the Australian Federal Police in investigating Clark's crimes abroad. *See Clark*, 435 F.3d at 1103–04. Yet, the Ninth Circuit did no more than note this cooperation, and Clark's conviction under § 2423(c) was ultimately affirmed. *See Clark*, 435 F.3d at 1117.

disclosure of these transcripts is denied.

### Conclusion

For the forgoing reasons, Sylver's motions (Doc. Nos. 67–69) are DENIED. The Clerk is directed to supply Sylver with a copy of the docket in this case and instructions for obtaining copies of hearing transcripts at his expense.

**IT IS SO ORDERED**.

Dated: February 17, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**